FILED 2026 JUN 16 PM 12:37 USDC-FLMD-ORL

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JOHN FRANCIS** and **PETER FRANCIS**,

Plaintiffs,

v.

Case No. 6:26-CV-1319-AGM-NWH

**THOMAS BARNETT**, in his individual capacity, and
**BRADLEY MARSHALL**, in his individual capacity,
Defendants.
_____________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs JOHN FRANCIS and PETER FRANCIS, each appearing pro se, sue Defendants THOMAS BARNETT and BRADLEY MARSHALL, each in his individual capacity, and allege as follows:

## I. INTRODUCTION

**1.** This is a civil-rights action under 42 U.S.C. § 1983 arising from the warrantless arrest of two brothers at Orlando International Airport ("MCO") on December 19, 2022. Plaintiff John Francis was arrested and jailed although no order or warning to leave the property was ever directed to him and he committed no offense; the arresting officer's stated reason, captured on body-worn camera, was that John "was with" his brother. Plaintiff Peter Francis was arrested in retaliation for recording public officials, questioning their conduct, and seeking to file complaints. The City of Orlando declined to prosecute all charges within eleven days (Ex. C), and the Orlando Police Department's own Internal Affairs Section later sustained a finding that the arrest of John Francis was improper and that there was no probable cause to charge him with trespass (Ex. B). Defendant Marshall also banned each Plaintiff from the airport for one year, delivering the ban while each was handcuffed and confined, with no mechanism to challenge or appeal it (Ex. E).

## II. JURISDICTION AND VENUE

**2.** This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4). This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

**3.** This Court has supplemental jurisdiction over the state-law claim under 28 U.S.C. § 1367(a) because it arises from the same case or controversy as the federal claims.

**4.** Venue is proper in the Orlando Division of the Middle District of Florida under 28 U.S.C. § 1391(b) and Local Rule 1.04 because the events giving rise to this action occurred at Orlando International Airport in Orange County, Florida.

**5.** All conditions precedent to the maintenance of this action, including the notice requirements of Section 768.28(6), Florida Statutes, have been performed, have occurred, or have been waived. Each Plaintiff timely served a written notice of claim upon the Florida Department of Financial Services and the appropriate agencies and officials, and more than six months elapsed without response or final disposition (Ex. G).

## III. PARTIES

**6.** Plaintiff John Francis is an adult United States citizen residing in Port Orange, Volusia County, Florida. Before the events described in this Complaint he had never been arrested.

**7.** Plaintiff Peter Francis is an adult United States citizen residing in Port Orange, Volusia County, Florida. Before the events described in this Complaint he had never been arrested.

**8.** Defendant Thomas Barnett was at all relevant times a sworn law-enforcement officer of the Orlando Police Department (ID 34223), acting under color of state law and within the course and scope of his employment. He is sued solely in his individual capacity.

**9.** Defendant Bradley Marshall was at all relevant times a Landside Operations supervisor or representative of the Greater Orlando Aviation Authority ("GOAA") (ID 11978), a governmental entity that operates MCO, acting under color of state law and within the course and scope of his employment. He is sued solely in his individual capacity.

**10.** Plaintiffs presently sue only the individual Defendants named above, each in his individual capacity.

## IV. FACTUAL ALLEGATIONS

**11.** On December 19, 2022, Plaintiffs were at MCO assisting their elderly parents, who have limited English proficiency and had missed a Delta Air Lines flight to New York purchased through a third-party travel agency. The parents' checked baggage had been loaded and its location was unresolved.

**12.** Plaintiffs were lawfully present in the public, non-secure areas of the main terminal, before any security checkpoint, where members of the public ordinarily accompany and assist traveling family members.

**13.** A frustrated dispute arose at the Delta ticket counter concerning the missed flight and the baggage. Plaintiff Peter Francis sought to speak with a supervisor, sought to file a complaint, and asked Defendant Barnett about making a police report concerning the baggage; that request was declined. Defendant Barnett arrived during the latter part of the ticket-counter interaction; he did not personally observe its beginning, and by his own sworn affidavit he was "made aware" of the earlier events by others rather than witnessing any criminal conduct by either Plaintiff (Ex. D).

**14.** Plaintiffs were not asked to leave the airport at the ticket counter. While still upstairs, after Peter Francis told Defendant Barnett he wished to make a police report, Barnett declined and

directed him to speak with the Greater Orlando Aviation Authority representative, pointing out Defendant Marshall, who was nearby. Behaving in an orderly manner, Peter Francis asked Defendant Barnett for permission to walk through to speak to Defendant Marshall, whom he was meeting for the first time, and Barnett told him yes. Plaintiffs then spoke with Defendant Marshall, explained that their baggage had been taken and that they had missed their flight. Defendant Marshall asked to see their baggage tags, stepped away to ask a Delta employee about the bags, and then directed Plaintiffs to the downstairs Delta baggage-service area. Although Plaintiffs were told this was where they should have gone, no one had so informed them earlier; they complied and went downstairs (Ex. A).

**15.** Plaintiffs waited in line at the baggage-service area. John Francis stood quietly in line with his arms crossed. Defendant Barnett, Officer Anthony Kirby (ID 15963), and Defendant Marshall followed Plaintiffs to the baggage-claim level and stood nearby, watching them. As Plaintiffs waited in line, Defendant Marshall remarked to Defendant Barnett, in words to the effect that "these guys will cause problems in the baggage claim area too" and also asked about the Plaintiffs' father — prejudging Plaintiffs and reflecting his focus on the family before any order to leave had been given and before either Plaintiff had done anything in that area.

**16.** Before any instruction to leave had been given to either Plaintiff, Defendant Marshall asked airport employees to obtain trespass forms. In that context, Defendant Barnett stated words to the effect of "I'll do all three of them, I don't care." The statement was captured on recording.

**17.** Observing Defendant Marshall seeking trespass forms, Peter Francis stepped away from the line and asked Defendant Barnett whether he had been asked to leave. Barnett deflected, telling him to ask Marshall. Peter Francis then asked Defendant Marshall whether he was being asked to leave, and Marshall answered "not yet" (Ex. A).

**18.** Several minutes into the encounter, Defendant Marshall stated for the first time that Peter had to leave the property. Barnett then stated that Peter would be arrested if he was told again and did not leave. Peter waited and looked to Defendant Marshall to repeat the order, but Marshall did not repeat it; Peter then asked the officers for their names and badge numbers (Ex. A).

**19.** Peter Francis stated more than once that he was leaving, including "Under threat of arrest, I'm leaving." He sought the officers' identifying information so that he could file a complaint, and Officer Kirby was in the process of preparing a card with his information when the arrests occurred (Ex. A).

**20.** At all times, Peter Francis was never violent, never threatening, never used fighting words and never incited any breach of the peace. He repeatedly addressed the officials as "sir." His conduct consisted of asking questions, verbal argument, and recording public officials performing public duties in a publicly accessible area — activity protected by the First Amendment.

**21.** At no point did Defendant Marshall, Defendant Barnett, or anyone else direct any order, warning, or instruction to leave to John Francis individually. Any purported leave order, warning, and threat of arrest was directed to Peter Francis. John Francis said little or nothing throughout the encounter — at most asking how to file a complaint against the officers — and committed no offense (Ex. A).

**22.** Defendant Barnett stated to Peter Francis words to the effect of, "If Delta complains, you will be locked up for disorderly conduct too." Peter Francis responded that he was not disorderly. Defendant Barnett then immediately placed both Plaintiffs under arrest, turning to John Francis and stating words to the effect of, "You too—you're going to jail." At the time of the arrests, no

Delta employee had provided any statement regarding Plaintiff's conduct. Any statements from Delta personnel were gathered only after the arrests had already occurred. Later, when asked on body-worn camera what John Francis had done, Defendant Barnett answered in words to the effect of: "He's with you … he was with you, he totally was."

**23.** Plaintiffs asked Defendant Barnett to reconsider, including asking why he could not issue a citation or a trespass warning instead of making a custodial arrest. He refused.

**24.** Defendant Barnett personally observed no offense by either Plaintiff. His sworn arrest affidavit states that he placed both Plaintiffs under arrest "due to GOAA wanting to press charges," and on body-worn camera an officer told Peter Francis that reconsideration was impossible because "the airport authority did the report" (Ex. A, D).

**25.** Both Plaintiffs were charged under Orlando City Code § 43.35 ("Trespass") and § 43.06 ("Disorderly Conduct") (Ex. D).

**26.** Orlando City Code § 43.06 defines disorderly conduct exclusively through eleven enumerated acts requiring, in substance, violent or tumultuous conduct placing persons or property in danger, fighting or riotous conduct, fraudulent schemes, accosting, constitutionally unprotected "fighting words," threats to kill or injure, or obstruction of vehicular or pedestrian traffic after an order to disperse. Neither Plaintiff committed any act enumerated in any subsection: John Francis stood silently in line, and Peter Francis's frustrated but non-violent questions, argument, and recording satisfy none of the ordinance's elements.

**27.** Orlando City Code § 43.35, by its plain text, prohibits desecrating or despoiling churches or charitable property and defacing or posting bills on private property. It contains no warning or refusal-to-leave element and does not describe any conduct by either Plaintiff. The City of

Orlando has no general municipal trespass-after-warning ordinance; that offense exists under Florida Statutes §§ 810.08–810.09, which the charging documents do not cite. The charging of "Trespass After Warning" under an inapplicable desecration ordinance evidences the absence of a careful probable-cause determination and the unreliability of the sworn affidavit (Ex. D).

**28.** The arrest affidavits record the time of arrest as 20:54. The officers' own recorded statements place the actual arrest at approximately 20:11 to 20:20 (Ex. A, D).

**29.** Defendant Barnett's affidavits attribute the alleged conduct to "Peter and John Francis" collectively, in a single group narrative, and identify no individualized act by John Francis. The names "Peter" and "John" appear in the officers' arrest paperwork and in Defendant Marshall's GOAA trespass log, but in none of the Delta employee statements. The written statements of the four Delta employees describe only verbal conduct — raised voices, argument, and recording — and none describes any threat, violence, or physical act. Those statements attribute the described conduct principally to one individual and do not identify any specific act by John Francis. The statements were gathered as part of the arrest documentation rather than offered as independent, contemporaneous reports (Ex. D, F).

**30.** Notably, none of the four Delta employee statements describes any specific act by John Francis. Each refers generally to "passengers," "the two young men," or "the man," and the conduct each describes — loud argument and recording — is attributed principally to a single individual. No witness statement, and no officer affidavit, identifies any individualized conduct by John Francis that would supply probable cause for his arrest (Ex. D, F).

**31.** While confined at the airport, Peter Francis repeatedly asked to speak with a supervisor. Sergeant William Walsh of the Orlando Police Department responded. Sergeant Walsh declined

to reconsider or re-examine the arrests, stating in substance that he assumed his officers were correct. When asked why John Francis had been arrested, Sergeant Walsh assumed that John must have refused to listen to the officers, without identifying any specific act by John and without investigating further.

**32.** While Plaintiffs were handcuffed and confined in separate holding rooms at the airport, Defendant Marshall entered each room and issued each Plaintiff a written trespass warning banning him from MCO for one year, through December 19, 2023. The warning forms state no method by which the ban could be appealed, challenged, or heard. Defendant Marshall told each Plaintiff only that if he returned within the year he would be re-arrested, and photographed each handcuffed Plaintiff using Marshall's personal cellphone (Ex. A, E).

**33.** Plaintiffs were then handcuffed, transported to the Orange County Jail, booked, photographed, and required to remove all clothing and change into jail uniforms while a corrections officer watched. They were held overnight; Peter Francis was released the following morning, and John Francis was released earlier, during the night, after their parents posted bond of $350 for each Plaintiff. The precise detention times appear in the jail's intake and release records.

**34.** Plaintiffs' elderly parents, who had been traveling for a long-awaited trip, instead spent the night outside the jail awaiting their sons' release. The mother was in tears and the father was visibly distressed, as the body-worn camera shows while Defendant Barnett spoke with him. Defendant Barnett told the parents that he believed they had "raised two good kids" but arrested both Plaintiffs anyway. While Peter Francis was handcuffed and confined and visibly distressed over his own arrest and his parents' distress, Defendant Barnett told him to "stop acting like a child."

**35.** GOAA's own written policy governing removal from the airport provides a graduated sequence — a directive to stop, a directive to leave, issuance of a trespass notice upon refusal, and arrest only upon violation of the notice by returning — and provides a detailed appeal procedure, including written request, a hearing, the right to counsel, and a written decision, for persons denied First Amendment activity permits. No comparable process, or any process at all, was afforded to Plaintiffs for their one-year exclusion.

**36.** On December 30, 2022, eleven days after the arrests, the City of Orlando, through its City Prosecutor, declined prosecution of all counts and dismissed all charges against both Plaintiffs (Case Nos. 2022-MO-001393-A-O and 2022-MO-001395-A-O) (Ex. C).

**37.** On December 26, 2023, the Orlando Police Department Internal Affairs Section (Inquiry No. 2023IR-0030) issued written findings sustaining a violation of RM 800-2, Arrests (a) Improper, by Defendant Barnett regarding the arrest of John Francis, and expressly determining that there was no probable cause to charge John Francis with Trespass After Warning (Ex. B).

**38.** Before this incident, neither Plaintiff had ever been arrested. The arrest now appears on background checks despite the dismissal of all charges. Plaintiff Peter Francis, a recent graduate who had passed his chiropractic board examinations and was awaiting licensure, was required to justify the arrest in writing to the Florida Board of Chiropractic Medicine, which delayed his professional licensure, and he lost a job interview scheduled for the morning after his release (Ex. I). Plaintiff John Francis, who also holds a professional degree, must likewise explain and account for the arrest where it appears on background checks (Ex. H).

**39.** As a direct and proximate result of Defendants' conduct, each Plaintiff suffered the deprivation of his liberty and freedom, the humiliation of arrest, booking, and a supervised

undressing and uniform change, an arrest record and booking photograph that now appear on background checks and were disseminated to third-party commercial websites, requiring Plaintiffs to seek their removal, a one-year exclusion from a public airport, during which neither Plaintiff entered MCO and Peter Francis was forced to travel through Tampa International Airport instead, incurring added burden and expense; emotional distress; and reputational injury; and Peter Francis additionally suffered the professional-licensing delay and lost employment opportunity described above.

**COUNT I — FALSE ARREST IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)**

*(Plaintiff John Francis against Defendant Barnett)*

**40.** Plaintiff John Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**41.** Defendant Barnett, acting under color of state law, seized and arrested John Francis without a warrant and without probable cause or arguable probable cause, in violation of the Fourth Amendment.

**42.** No probable cause existed for trespass: no warning or order to leave was ever communicated to John Francis and he refused no order — as the body-worn camera footage shows and as the Orlando Police Department's Internal Affairs Section expressly determined (Ex. A, B).

**43.** No probable cause existed for disorderly conduct: John Francis stood silently in line with his arms crossed and committed no act enumerated in Orlando City Code § 43.06. The affidavit identifies no individualized act by him and the civilian witnesses describe none (Ex. D, F). Mere presence and association with another person furnish no basis for arrest, and Defendant Barnett's

own stated reason — that John "was with" his brother — confirms the absence of any individualized basis.

**44.** The right to be free from arrest without probable cause was clearly established. No reasonable officer could have believed there was even arguable probable cause to arrest a person to whom no warning was ever directed and who committed no offense. Defendant Barnett acted willfully and with reckless or callous indifference to John Francis's federally protected rights, entitling John Francis to compensatory and punitive damages.

## COUNT II — MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT (42 U.S.C. § 1983)

*(Plaintiff John Francis against Defendant Barnett)*

**45.** Plaintiff John Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**46.** Defendant Barnett initiated and procured criminal charges of Trespass After Warning and Disorderly Conduct against John Francis by sworn affidavit, causing John Francis to be seized pursuant to legal process — arrested, booked, jailed, and required to post bond — without probable cause (Ex. D).

**47.** The criminal proceeding terminated in John Francis's favor when the prosecution declined all counts and dismissed all charges on December 30, 2022 (Ex. C).

**48.** Defendant Barnett acted with malice and without probable cause, as confirmed by the absence of any individualized factual basis in his own affidavit, his recorded admission that John was arrested because he "was with" his brother, the citation of an inapplicable ordinance, and the Internal Affairs determination that no probable cause supported the trespass charge (Ex. B, D). John Francis is entitled to compensatory and punitive damages.

**COUNT III — RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)**

*(Plaintiff John Francis against Defendants Barnett and Marshall)*

**49.** Plaintiff John Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**50.** John Francis engaged in activity protected by the First Amendment, including seeking to file complaints against and petition public officials and associating with his brother's protected recording, questioning, and speech.

**51.** Defendants subjected John Francis to adverse action — arrest, jailing, criminal charges, and a one-year exclusion from the airport — that would deter a person of ordinary firmness from exercising First Amendment rights. The retaliatory motive is evidenced by Defendant Marshall's procurement of trespass forms before any warning had been given, the arrest of John Francis without any individualized basis, and Defendant Barnett's stated reason that John "was with" his brother.

**52.** Because no probable cause supported John Francis's arrest, the no-probable-cause requirement of Nieves v. Bartlett, 587 U.S. 391 (2019), is satisfied and presents no bar to this claim. John Francis is entitled to compensatory and punitive damages.

**COUNT IV — RETALIATION IN VIOLATION OF THE FIRST AMENDMENT (42 U.S.C. § 1983)**

*(Plaintiff Peter Francis against Defendants Barnett and Marshall)*

**53.** Plaintiff Peter Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**54.** Peter Francis engaged in activity protected by the First Amendment, including recording public officials performing public duties in a publicly accessible area, verbally questioning and

criticizing official conduct, and seeking to file a police report and complaints, including requesting officers' names and badge numbers.

**55.** Defendants subjected Peter Francis to adverse action — removal, arrest, jailing, criminal charges, and a one-year exclusion — with retaliatory motive. The arrest followed immediately upon his assertion that he was not disorderly and his request for officer identification, while Officer Kirby was still preparing the identification card Peter had requested; trespass forms were sought before any leave order was given; and the disorderly-conduct charge was brought under an ordinance whose elements require violence, fighting, fighting words, or threats — none of which occurred — evidencing that the charge was a pretext to punish protected speech.

**56.** To the extent Defendants assert arguable probable cause, this claim falls within the exception recognized in Nieves v. Bartlett for circumstances presenting objective evidence that otherwise similarly situated individuals not engaged in the same protected speech are not arrested. Peter Francis is entitled to compensatory and punitive damages.

## COUNT V — DEPRIVATION OF PROCEDURAL DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

*(Plaintiffs John Francis and Peter Francis against Defendant Marshall)*

**57.** Plaintiffs John Francis and Peter Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**58.** Each Plaintiff possessed a constitutionally protected liberty interest in access to Orlando International Airport, a publicly owned and publicly funded facility operated by a governmental authority and held open to the general public.

**59.** Defendant Marshall, acting under color of state law, deprived each Plaintiff of that interest by imposing a one-year exclusion from the airport, delivered while each Plaintiff was handcuffed

and confined and unable to respond, without any pre-deprivation or post-deprivation notice of a method to be heard, to challenge, or to appeal the exclusion. That GOAA provides a detailed written appeal-and-hearing procedure for other determinations, such as activity-permit denials, while providing no process whatsoever for a year-long exclusion, underscores that the deprivation here was arbitrary (Ex. E).

**60.** The deprivation of a year-long exclusion from a major public airport without any process whatsoever violated the Fourteenth Amendment's guarantee of procedural due process. Plaintiffs are entitled to compensatory and punitive damages.

**COUNT VI — FALSE IMPRISONMENT (FLORIDA COMMON LAW)**

*(Plaintiffs John Francis and Peter Francis against Defendant Barnett)*

**61.** Plaintiffs John Francis and Peter Francis realleges and incorporates paragraphs 1 through 39 above as if fully set forth herein.

**62.** Defendant Barnett unlawfully and intentionally restrained each Plaintiff against his will and without legal authority or probable cause, by arresting, handcuffing, transporting, and causing each Plaintiff to be jailed overnight.

**63.** Defendant Barnett acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard of Plaintiffs' rights, as evidenced by the arrest of John Francis solely for being "with" his brother, the refusal to consider a citation or warning in lieu of custodial arrest, the deference of the probable-cause determination to GOAA, and the charging of offenses whose elements were not met under the ordinances cited. Individual liability is therefore proper under Section 768.28(9)(a), Florida Statutes. All conditions precedent have been satisfied or waived (Ex. G). Plaintiffs are entitled to compensatory and punitive damages.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants on all counts;

b. Award compensatory damages in an amount to be determined at trial;

c. Award punitive damages against the Defendants on the federal claims and on the state-law claim as permitted by law;

d. Award the costs of this action, and, should Plaintiffs retain counsel, reasonable attorney's fees under 42 U.S.C. § 1988;

e. Grant such other and further relief as the Court deems just and proper.

Plaintiffs respectfully reserve the right to amend this Complaint as permitted by Federal Rule of Civil Procedure 15.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/ John Francis

**John Francis,**
*Plaintiff Pro Se*
5968 Shady Creek Ln,
Port Orange, FL 32128
P: 386-631-3239
E: John_Francis3@hotmail.com

/s/ Peter Francis

**Peter Francis,**
*Plaintiff Pro Se*
5968 Shady Creek Ln,
Port Orange, FL 32128
P: 386-631-3237
E: Peter_Francis1@yahoo.com